IN THE UNITED DISTRICT COURT FOR THE WESTERN DISTRICT OF ARKANSAS

TEXARKANA DIVISION

RICKY DARDEN; CAROLYN HAYES;   PLAINTIFFS
ANGELA LAFAYETTE; and JARVIS YOUNG

Vs.                            NO.  4:16-CV-4023

SOUTHWEST ARKANSAS DEVELOPMENT, INC., d/b/a   DEFENDANT
SOUTHWEST ARKANSAS DEVELOPMENT COUNCIL

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Comes now, Southwest Arkansas Development Council, Inc., Defendant, by and through its Counsel and for its Brief in Support of Defendant's Motion for Summary Judgment states that this matter should be dismissed pursuant to Federal Rules of Civil Procedure, Rule 56 as there is no genuine dispute or issue as to any material fact in this case that supports the Plaintiffs' allegations that Defendant violated the Fair Labor Standards Act, 29 U. S. C. 201, et seq, and the Arkansas Minimum Wage Act, Ark. Code Ann. 11-4-201, et seq., and the Arkansas Civil Justice Reform Act, Ark. Code Ann. 16-55-206.  Thus, Defendant asserts that Defendant is entitled to judgment as a matter of law.  Defendant asserts the evidence attached herein shows that Plaintiffs were compensated for all hours of regular and overtime worked and reported by Plaintiffs, and that no genuine dispute or issue of material fact exist as to whether Plaintiffs were properly compensated for hours worked and reported to Defendant by Plaintiffs on their hourly work sheets.  Defendant asserts that the evidence demonstrates that the Plaintiffs were not denied regular or overtime compensation associated with an automatic deduction for lunch break policy

and that no genuine dispute or issue of material fact exists as to whether Plaintiffs were compensated for any lunch break wherein Plaintiffs were required to work.  Defendant asserts the evidence demonstrates that Plaintiffs were not denied any compensation for regular or overtime hour of work associated with Plaintiffs allegedly working off-the-clock.  Further, Defendant asserts the evidence attached and the evidence submitted with earlier pleadings and motions in this matter show that there is no genuine issue for trial in this matter.  Defendant argues that the specific facts and evidence support a finding that no genuine dispute of material facts relative to whether Plaintiffs were properly compensated while in the employ of Defendant exists in this case.  Furthermore, Defendant avers that the evidence shows Plaintiffs were properly compensated for all hours worked, documented and reported by Plaintiffs to Defendant.  Defendant posits that Plaintiffs cannot come forward with any specific facts showing there is a genuine issue for trial; therefore, Defendant is entitled to a summary judgment as a matter of law as no genuine material dispute or issue exist as to whether Defendant violated the Arkansas Minimum Wage Act or the Fair Labor Standards Act in regards to Plaintiffs' pay entitlements.

## I.  INTRODUCTION

1. **Procedural Background and Pleadings**

A. **Plaintiffs' Complaint**

On January 28, 2015, Plaintiff, Ricky Darden, a former Non-Emergency Medical Transportation Driver for Defendant, Southwest Arkansas Development Council, Inc., filed this civil litigation in the United States District Court for the Eastern District of Arkansas, Western Division, in Little Rock, Arkansas, through his counsel, Sanford Law Firm. Originally, the Plaintiff filed his complaint individually.  In his original complaint, Plaintiff alleged Defendant violated the Fair Labor Standards Act (FLSA), 29 U.S. C. 201 et seq, the Arkansas Minimum

Wage Act (AMWA), Ark. Code Ann. 11-4-201, et seq., and the Arkansas Civil Justice Reform Act, Ark. Code Ann. 16-55-206, in that he was allegedly denied overtime compensation for hours he allegedly worked from the date of his employment with Defendant.

Plaintiff filed an amended complaint on June 22, 2015. In his amended complaint, Plaintiff refined and amended his allegations in an attempt to include those employees of Defendant that Plaintiff deems were similarly situated to Plaintiff.

On December 21, 2016, Plaintiffs, Ricky Darden, Carolyn Hayes, Angela Lafayette, and Jarvis Young filed a Second Amended and Substituted Complaint alleging that Defendant Southwest Arkansas Development, Inc. violated the overtime provisions of the Fair Labor Standards Act, 29 U. S. C. 201, et seq. (the "FLSA"), the Arkansas Minimum Wage Act, Ark. Code. Ann. 11-4-201, et seq. (the "AMWA") and the Arkansas Civil Justice Reform Act, Ark. Code Ann. 16-55-206. Plaintiffs seeks a declaratory judgment, monetary damages, liquidated damages, prejudgment interest and cost, including attorney fees within the statutory limitation period for Defendant's alleged failure to pay Plaintiffs proper overtime compensation under the FLSA and the AMWA. Also, Plaintiffs seeks punitive damages for Defendant's alleged violation of the AMWA based on the principles found in the Civil Justice Reform Act, Ark. Code. Ann. 16-55-206.

In Plaintiffs' Second Amended and Substituted Complaint, Section II, "Jurisdiction and Venue", Plaintiffs asserted that subject matter jurisdiction is in the United States District Court for the Western District of Arkansas under the provision of 28 U. S. C. 1331 because the suit allegedly raises a federal question under the Fair Labor Standards Act. Also, Plaintiffs alleged Arkansas Minimum Wage Act violations, which arose out of the same set of facts as the federal cause of action and avers that the state and federal causes of action would be expected to be tried

in the same litigation. Plaintiffs alleged that the Court has pendent jurisdiction over Plaintiffs' AMWA claim pursuant to 28 U.S.C. 1367 (a). Plaintiffs alleges that venue is proper in the Texarkana Division of the U. S. District Court for the Western District of Arkansas pursuant to 28 U.S. C. 1391 in that a substantial part of the acts complained of by Plaintiff s were allegedly committed and had their principal effects against Plaintiffs, individually and on behalf of other similarly situated within the Texarkana Division of the Western District of Arkansas[1].

In Plaintiffs' Second Amended and Substituted Complaint, Section III, Plaintiffs that Defendant hired each Plaintiff to perform Non-Emergency Medicaid Transportation Drivers. Plaintiffs assert that Drivers were expected to provide transportation services to NEMT beneficiaries and Defendant's clients to appointments in and out of the area as dictated by clients schedules. Plaintiffs asserts that Plaintiffs spent a substantial amount of time driving clients to, and performing duties in, Little Rock, Arkansas, on behalf of Defendant. Plaintiffs allege that they performed Drivers duties such as providing transportation services to Medicaid clients, assisted passengers on and off the vehicles, to and from the front door of the SWADC facility, assisted clients with their seatbelts, assisting wheelchair passengers, and waiting for clients to have their medical exams and procedures. Plaintiffs allege that Defendant paid each Plaintiff an hour rate for Plaintiffs services as Drivers

Also, Plaintiffs assert that Defendant required Plaintiffs to track their work time using a document referred to as a Driver's Manifest. Plaintiffs allege that the Driver Manifest included the name and phone numbers of clients that the Drivers were supposed to pick up and drop off for each day. Plaintiffs allege that Defendant maintained a policy requiring drivers, including Plaintiffs, to show their on their Drivers Manifest that they had taken a lunch break for each

---

[1] See ECF No. 43.

Defendant SWADC's Brief in Support of Its Motion For Summary Judgment

work day. Plaintiffs aver that Defendant maintained a policy requiring drivers, including Plaintiffs to keep a cellphone ready and nearby at all times so that Defendant could contact them at any time. Plaintiffs allege that Defendant's policy require Plaintiffs to keep a cellphone ready and nearby applied at all times during each Plaintiff's shift, from start to finish even when Plaintiffs were eating lunch. Plaintiffs assert that Defendant's policy required drivers, after dropping off a client at an appointment, to be ready to pick up a client at the time that the client called even if they were eating, and even if a client's appointment ended early. Plaintiffs asserted Defendant maintained no policy or practice of providing drivers a relief driver during meal times to pick up the clients the Drivers transported. Plaintiffs alleged that Defendant did not completely relieve Drivers of all duties during the hour in which Defendant in which Defendant deducted for lunch or meal time. In essence, Plaintiffs alleged that they were required to monitor their cellphones and were not completely relieved of their duties due to their lunch or meal period yet they were required to deduct one hour from daily for lunch.

Further, Plaintiffs alleged that at the end of each driver's shift or otherwise after the driver returned to the office at the end of all of their transportation duties for the day, Defendant provided the driver with a Manifest that contained the names of the next day's clients. Plaintiffs alleges said Manifests were provided at the end of the day and that Plaintiffs were required to contact or call each client to remind each client of their pick up time. Furthermore, Plaintiffs alleged that Plaintiffs time spent calling clients on the Manifests were not recorded and Defendant did not pay Plaintiffs for the time that Plaintiffs spent calling clients. In essence, Plaintiffs alleged that they were required to contact clients while off-the-clock and they were not compensated for said hours of work.

Plaintiffs alleged that Defendant failed to pay each Plaintiff at a rate of one and one-half time each Plaintiff's regular rate for all hours worked over forty (40) hours per week despite the fact that Defendant knew or should have known of its obligation to pay each Plaintiff at the aforesaid rate of pay for hours of work in excess of forty (40) hours per week.  Plaintiffs alleged that Defendant is liable to each Plaintiff for violation of the FLSA and the AMWA for unpaid overtime wages, liquidated damages, pre-judgment interest and cost, including reasonable attorneys.   Also, Plaintiffs seeks punitive damages under the Arkansas Civil Justice Reform Act for Defendant's alleged failure to pay overtime to Plaintiffs and other similarly situated Drivers.[2]

**B. Defendant's Response to Plaintiffs' Second Amended and Substituted Complaint**

Defendant has denied each and every allegations of Plaintiffs' complaint wherein it is alleged that Defendant violated the FLSA and the AMWA.

## II. <u>Argument</u>

Defendant argues that this Court should enter a motion for summary judgment in this matter in favor of Defendant as the evidence referenced and presented herein shows that there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c).  Defendant acknowledges that as moving party the Defendant has the initial responsibility of demonstrating the absence of a genuine issue of material fact. Defendant asserts that Plaintiffs have not and cannot come forth with specific facts showing that there is a genuine issue for trial.  A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the non-moving party. The courts have held that a mere scintilla of evidence to support the non-moving party's position of insufficient evidence is insufficient to

---

[2] See ECF Documents 43

defeat a motion of summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party.  See Helmert v. Butterball 805 F. Supp. 2d 655 (2011), citing Anderson Liberty Lobby, Inc., 477 U. S. 242 (1986), Cheshewalla v. Rand & Son Constr. Co., 415 F.3rd 847 (8th Cir. 2005), Celotex Corp. v. Catrell, 477 U. S. 317 (1986), and Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U. S. 574(1986).

Pursuant to the Fair Labor Standard Act, an employer must pay its employees a minimum wage for forty hours of work each week 29 U. S. C. 206(a) (2016). If an employee works in excess of forty hours per week then the employer must pay the employee at a rate of not less than one and one-half times the regular rate at which he is employed.  29 U. S. C. 207 (a)(1).  The Act did not define when an individual should be considered working for purposes of the Act. However, a series of Supreme Court cases addressed the issue of what constitutes hours of work and defined the work as physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.  The Supreme Court has also stated that time spent predominately for the benefit of the employer rather than for an employee's own benefit could constitute hours of work.  See Henson v. Pulaski County Sheriff Department, 6 F.3d 531 (1993) citing Tennessee Coal, Iron & Railroad v. Muscoda Local No. 123, 321 U. S. 590 (1944), and Armour & Co. v. Wantock 323 U. S. 126 (1944), and Skidmore v. Swift & Co., 323 U. S. 134 (1944).

    1. Compensability for Meal Times and the Automatic Lunch Hour Deduction

In the case at hand, the Plaintiffs claims that the Defendant violated the FLSA and the AMWA in that Plaintiffs were not completely relieved of duty during the time set aside for Plaintiffs as lunch.  Plaintiffs alleges that they were required to carry a cellphone at all time and keep it ready and nearby, that Plaintiffs  had to be ready to pick up clients at any the time a client

7

called even during lunch, and Plaintiffs were require to be ready to pick up the client even if the client's appointment ended early. Plaintiffs allege they had no relief driver during lunch. Plaintiffs allege they were required to deduct an hour for lunch even on days that they were not completely relieved from work during their lunch.[3] In essence, Plaintiffs assert that since they were not completely relieved of duty during the lunch hour they should be compensated overtime as their hours of work during numerous weeks during their employment for Defendant would have been in excess of forty hours.

Defendant asserts that there is no genuine issue of material fact in dispute as it relates to Plaintiff's allegations relative to a missed lunch period or mealtime and/or the alleged automatic deduction of one hour for lunch. Defendant posits that the great weight of the evidence indicates that Plaintiffs were not engaged in any work nor required to be engaged in any work or substantial duties during the time set aside or chosen by them to be their lunch time or meal period. Plaintiffs posits that the evidence demonstrates the Plaintiffs were allotted at least a one hour lunch period when Plaintiffs worked in excess of seven hours, a thirty minute lunch if they worked between six and six and one-half hours, and a fifteen minute break if they were required to work for less than five hours. Defendant asserts that the evidence shows that Plaintiffs were not required to remain in the van assigned to them when they were on lunch break or on their fifteen minute rest period and they were not restricted to any particular location. Defendant avers that the evidence reveals that Plaintiffs were not directed to miss or skip any lunch period or break due to accepting calls from clients regarding pick up or picking them up early from their medical appointment. Defendant asserts that Plaintiffs' driver's manifests were developed to allow a period of down-time for a lunch or break period. Defendant avers that the evidence

---

[3] See ECF No. 1, ECF No. 5, and ECF No. 32-1

support the fact that Plaintiffs were not required to work during their lunch period, but Plaintiffs could utilize their lunch period or break time solely for their benefit. Drivers were not limited in their movement or other activity during their meal period and they have not put forth any evidence of limitations. They are merely required to monitor their cellphones for dispatching purposes. The evidence in the case at hand demonstrates that several NMET drivers, some with years of service in Defendant's employ, declared that they understood the Defendant's lunch policy, were not denied the opportunity to take a lunch, and that lunch time was not deducted from them. Defendant avers that the evidence shows that NMET drivers were instructed and encouraged to take their lunch breaks and informed that they were mandatory.[4]

Defendant argues that Plaintiffs' lunch period and break period were not predominately for the benefit of the employer, but was primarily for the employees' benefit. The Plaintiffs, although in possession of a cellphone for dispatching purposes, were not limited in how they could utilize their lunch period. Plaintiffs appear to argue that given that they were not completely relieved of duty during their lunch period, they should be compensated for all lunch period. Defendant argues that the Eighth Circuit has rejected Plaintiffs' purported application of the law for cases similar to the one at hand. In Henson v. Pulaski County Sheriff Department, supra, the Eighth Circuit in addressing police officers' claims that their meal breaks should be compensated because they were not completely relieved of duty during lunch found that that standard of being completely-relieved-of-duty was not appropriate for their situation. The Court found that the completely-relieved-of-duty standard was not the most practical and realistic approach to apply under their circumstances. In that case, police officers were seeking to be compensated for meal-time argued that they were not completely relieved of duty. While on

---

[4] See ECF No. 11-9 pages 2 of 9, 4 of 9, 8 of 9, and 9 of 9, ECF No. 17-2 and ECF No 17-5 thru 17 -20.

lunch, police officers were required to monitor their radios, they were subject to being approached by members of the public at times, and they had to respond to emergencies. However, they had no other duty, they were not restricted to certain areas, and they could tend to personal errands. In that case, the Eighth Circuit found that summary judgment was appropriate because the only potential restriction on the officers use of their meal time for their own purposes was that citizens might ask them questions and from the monitoring of their radios for emergency calls to return to service.

      In the case at hand, Plaintiffs appear to make the same or similar argument as the police officer in the Henson and the facts appear to be somewhat similar except the for the fact that Plaintiffs as an NMET driver are not likely to be called upon by citizens for assistance or to answer questions, and they are allegedly monitoring their cellphone, keeping it nearby awaiting client calls or dispatching that would not be deemed to be emergencies. Also, the evidence shows that Plaintiffs were not restricted in geographical location and could go where they desired as long as they picked up they client at the time they were dispatched. In fact, Plaintiffs was at liberty to run personal errands. Plaintiffs' lunch period were spent primarily for their own benefit and not that of Defendant. Also, it should be noted that if Plaintiffs were required to miss a lunch or meal period, then Defendant advised that Plaintiffs and all NMET Drivers should report the fact that their lunch was interrupted so that they could be compensated. Plaintiffs have not indicated in any of their filing that they were denied any compensation after advising Defendant of a missed lunch opportunity. Therefore, Defendant asserts that Plaintiffs are not entitled to compensation as a result of any allegedly missed and unreported lunch or meal periods. See White v. Baptist Memorial Health Care Corporation, 699 F. 3d 869 (6th Cir. 2012); Ruffin, et al., v. MotorCity Casino, 775 F. 3d 807 (6th Cir. 2015) (summary judgment affirmed

10

where guards' meal periods were deemed not compensable despite the fact that they were required to monitor their two-way radios, respond to emergencies, and remain in the casino cafeteria during meal periods); Avery v. City of Talledga 24 F3d 1337 (11th Cir. 1994) (meal period of police officers deemed non-compensable despite the fact that the police officers had to monitor their radios as police officers were otherwise free to spend their meal breaks in any way they chose as long as they remained in uniform); and, Jones-Turner v. Yellow Enterprise System, LLC., 597 Fed Appx 293 (6th Cir. 2015) (summary Judgment granted against emergency medical technicians seeking compensation for meal periods where district court found the meal period were not compensable).  In this light, Defendant asserts that Plaintiffs' meal time or lunch break were not compensable.  Defendant avers that there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law.

    2. Compensability of Client Off-the-Clock Contacts

Defendant asserts that summary judgment is proper and should be granted in favor of Defendant as it relates to Plaintiffs' allegations that Plaintiffs engage in contacting client's off-the-clock in preparation for next day transportation.  Defendant asserts that no genuine dispute of material facts exists in this regard and Defendant is entitled to judgment as a matter of law. Helmbert v. Butterball, supra.  Defendant asserts that Plaintiffs were responsible for contacting clients as a planning mechanism to ensure that clients would be available for their scheduled appointment on the date after they received their driver manifest.  However, while Plaintiffs allege that they contacted clients off-the-clock, several other NMET drivers declared that they contacted their clients while on the clock.  Defendant avers that no driver was ever instructed to contact clients off-the-clock and the greater weight of the evidence in this case dictates a finding

that no such approved policy or practice existed at Defendant's agency.[5] Defendant asserts that Plaintiffs have not presented even a scintilla of evidence to support their allegations that they were engaged in any off-the-clock work. Plaintiffs were not instructed or authorized to contact any client after hours. Defendant asserts that such activity would be considered non-compensable as any such activity would be considered postliminary insignificant work.

In light of Plaintiffs' allegation regarding off-the-clock contacts with Defendant's clients in preparation for next day transportation, the Defendant reviewed the telephone records of Plaintiffs where records could be acquired by their service provider and compared the telephone records with the telephone numbers of Defendant's clients to determine if any phone calls were made by Plaintiffs off-the-clock. Defendant asserts that its analysis of the phone records of Plaintiffs Carolyn Hayes and Ricky Darden revealed that any calls made by these plaintiffs were insignificant or de minimus and in that they amounted to seconds or minutes of time, if any, during the period in question.

According to the Declaration of Jeff Cummings, Transportation Supervisor, he and his staff were able to conduct an analysis of the records of Plaintiffs Carolyn Hayes and Ricky Darden as detailed records for these plaintiffs could be provided by the provider of their telecommunication services. The analysis of the records of Plaintiff Carolyn Hayes revealed that for the year 2013, her minutes used for phone calls made to Defendant's clients after normal close of business hours totaled twelve (12) minutes over a period of twelve days for an average of 1.7 minutes a day. No other off-the-clock calls could be tied to Defendant's clients. The analysis of the telephone records of Plaintiff Hayes for the year 2014 revealed that her minutes usage for phone calls made to non-emergency medical transportation clients after what would be

---

[5] See ECF No. 17-2; and, ECF No. 17-5 thru 17-20

12

the normal close of business was a total of one hundred thirty-nine (139) minutes over 82 day in the year for an average of 1.7 minutes a day. No other minutes could be tied to calls to Defendant's clients during the rest of the entire year. The analysis of the telephone records for Plaintiff Hayes in the year 2015 revealed that the total minutes usage for phone calls made to non-emergency medical transport clients after what would be the normal close of business was thirty-five (35) minutes over twenty-three (23) days for an average of 1.3 minutes a day. No other minutes could be tied to calls to Defendant's clients during the rest of the entire year. (See Exhibit 1 – Declaration of Jeff Cummings).

In regard to the telephone records of Plaintiff Ricky Darden, Mr. Cummings declares that for the year 2013 through 2015 total minutes used for phone calls made to non-emergency medical transport clients after what would be the normal close of business was for 4.666 hours for the entire three year period or less than 1.5 hours a year and less than a minute a day on average for each year in question. (See attached Exhibits 1). This off-the-clock time amounts to 280 minutes over a three year period and even if aggregated it is insignificant. In regards to Plaintiffs Lafayette and Young, no detailed records could be provided by their service provider. However, Defendant asserts that if their activity is similar to that of Plaintiffs Hayes and Darden, and it should be noted that they declared that they are similarly situated, then the Defendant asserts that their activity would also be deemed de minimus even if aggregated and thus not compensable. A three-factor test has been adopted to determine whether time is de minimis: (1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis. It should be noted that there is no precise amount of time that may be denied compensation as de minimis. However, the Courts have held that even if an activity might otherwise be compensable, Courts

may disregard de minimis claims concerning only a few seconds or minutes of work beyond the scheduled working hours. See <u>Von Freiwalde vs. Boeing Logistics Support System</u>, 339 Fed Appx. 448 (5th Cir. 2009); and <u>Lindow v. United States</u>, 738 F.2d 1057 (9th Cir. 1984), (most courts have found daily periods of approximately 10 minutes de minimus even though otherwise compensable). Defendant asserts that given the insignificant amount of time that it was able to discover during its analysis of Plaintiffs telephone records, the practicability of recording such time, the size of the aggregate amount, and the lack of regularity in this case the off-the-clock time supposedly worked by Plaintiffs should be denied as de minimus and non-compensable.

In light of the evidence presented Defendant asserts that no genuine issues of material fact exist regarding client contacts and that any off-the-clock postliminary activities by Plaintiffs were insignificant, unknown to the Defendant and non-compensable. Therefore, Defendant is entitled to judgment as a matter of law as there is no genuine issue in dispute in this case and this matter should be dismissed via summary judgment.

3. <u>The DOL Investigation and Findings</u>

Defendant asserts that the March 2015 FLSA Investigation by the U. S. Department of Labor demonstrates that no genuine issue of material fact exist in this case and that Defendant is entitled to judgment as a matter of law. As state earlier, a review of compensation including regular and overtime compensation for drivers at Defendant's Miller County Office by the Department of Labor resulted in finding of no violations as it relates to Defendant's payment of compensation to NMET Drivers. Specifically, a review was undertaken of Mr. Darden's pay and a finding issued indicated he was properly paid for the period of March 2013 through March 2015. Defendant asserts that while such a find is not binding on the Court, it can be considered to be persuasive and that this Court should consider this investigation and its finding in making

its assessment in this case. Given the proper consideration, the Defendant asserts that the Courts results should be that no genuine issue of material facts exists in this case and that Plaintiffs are not due any compensation as Defendant has not violated the FLSA. Defendant asserts that Plaintiffs have not and cannot come forth with specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the non-moving party. The courts have held that a mere scintilla of evidence to support the non-moving party's position of insufficient evidence is insufficient to defeat a motion of summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party. No such evidence exists for Plaintiffs in this case and this matter should be dismissed and denied.

Respectfully Submitted,

SOUTHWEST ARKANSAS DEVELOPMENT COUNCIL, INC.

DEFENDANT

/s/ Garland E. Yarber

Date: April 6, 2017

By: Garland E. Yarber

Attorney at Law
4425 Jefferson, Suite 108
Texarkana, AR 7185
(903) 276-7657
garland@cableone.net
AR BAR 86180

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was served on Plaintiffs, Ricky Darden, Carolyn Hayes, Angela Lafayette, and Jarvis Young through his counsel, Attorney Joshua West, at the address and email address set out below this the 6th day of

April 2017 via ECF pursuant to the Federal Rules of Civil Procedure and the local rules of the U. S. District Court for the Eastern and Western Districts of Arkansas.

Sanford Law Firm, PLLC
One Financial Center
650 South Shackleford, Suite 411
Little Rock, Arkansas 72211
west@sandfordlawfirm.com

/s/ Garland E. Yarber
By: Garland E. Yarber
    Attorney at Law
    4425 Jefferson, Suite 108
    Texarkana, AR 7185
    (903) 276-7657
    garland@cableone.net
    AR BAR 86180

Defendant SWADC's Brief in Support of Its Motion For Summary Judgment