IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

RICKY DARDEN; CAROLYN HAYES;
ANGELA LAFAYETTE; and JARVIS YOUNG                                    PLAINTIFFS


V.                                          CASE NO. 16-CV-4023


SOUTHWEST ARKANSAS DEVELOPMENT, INC., d/b/a
SOUTHWEST ARKANSAS DEVELOPMENT COUNCIL                                DEFENDANT


**ORDER**

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 50. Plaintiffs have filed a response. ECF No. 53. Defendant has filed a reply. ECF No. 55. The Court finds this matter ripe for consideration.

**I. BACKGROUND**

This action was originally filed by Plaintiff Ricky Darden in the United States District Court for the Eastern District of Arkansas on January 28, 2015, alleging violations of the Fair Labor Standards Act ("FLSA") and Arkansas Minimum Wage Act ("AMWA"). ECF No. 1. Plaintiff Darden subsequently filed a Motion for Rule 23 Class Certification on November 13, 2015, seeking class certification in regard to his AMWA claims. ECF No. 11. The case was later transferred to the United States District Court for the Western District of Arkansas on March 16, 2016. ECF No. 27. This Court subsequently refused to exercise supplemental jurisdiction over Plaintiff Darden's AMWA class claims and dismissed those claims without prejudice on August 3, 2016. ECF No. 30. On that same day, the Court, accordingly, denied Plaintiff Darden's Motion for Rule 23 Class Certification as moot. ECF No. 31.

In light of these rulings, the Court gave Plaintiff Darden leave to file a Second Amended and Substituted Complaint, adding three additional plaintiffs.[1] ECF No. 40. Plaintiffs filed their Second Amended and Substituted Complaint on December 21, 2016. ECF No. 43. Plaintiffs allege that Defendant failed to provide proper overtime compensation in violation of the FLSA, 29 U.S.C. §§ 207, *et seq.*, and the AMWA, Ark. Code Ann. §§ 11-4-211, *et seq*. ECF No. 43, ¶ 2. Plaintiffs also contend that they are entitled to punitive damages under the Arkansas Civil Justice Reform Act ("ACJRA"), Ark. Code Ann. § 16-55-206. Defendant subsequently filed the instant Motion for Summary Judgment and argues that summary judgment is proper as, based on the record, there is no genuine issue of material fact. ECF No. 50.

Plaintiffs are former employees of Defendant who were employed as Non-emergency Medicaid Transportation ("NEMT") Drivers. ECF No. 51, ¶ 4; ECF No. 54, ¶ 4. In that role, "Plaintiffs were required to pick up clients from their place of residence, drop clients off at their medical appointments, wait or pick up additional clients who were on their driver's manifest and drop them at their appointments, pick up clients from their appointments upon completion of their appointment and transport them back to their place of residence." ECF No. 51, ¶ 14; ECF No. 54, ¶ 14. Defendant paid each Plaintiff an hourly rate. ECF No. 43, ¶ 21. Defendant provided each Plaintiff with a cell phone that they were required to carry for the purpose of receiving dispatches from Defendant and communicating with dispatchers and clients. ECF No. 51, ¶ 10; ECF No. 54, ¶ 10.

At the end of each day, Defendant gave each Plaintiff a "Driver's Manifest" (hereinafter "manifest") detailing the next day's schedule. ECF No. 51, ¶¶ 11, 12, 13; ECF No. 54, ¶¶ 11, 12, 13. "The driver's manifest contained the name of the Defendant's clients to be transported, the client's address, the location of the client's appointment, the time for their appointment,

---

[1] Plaintiff Darden had previously filed an Amended Complaint on June 22, 2015. ECF No. 5.

requested pick up times, actual pick up and drop off times, driver's run start, first pick up[,] driver's run end, stop time, break periods, odometer readings, last drop-off, date, and signature and initial of driver." ECF No. 51, ¶ 12; ECF No. 54, ¶ 12. Upon receiving the manifest, each Plaintiff was required to contact the clients listed to confirm their appointment and transportation needs for the following day. ECF No. 51, ¶ 13; ECF No. 54, ¶ 13.

Defendant had a policy that Plaintiffs, as NEMT drivers, "were allotted a one hour lunch when [they] worked more than seven hours a day; [] were allotted a thirty-minute lunch when [they] worked between six and six and one-half hours a day; and, [] were allotted a break of fifteen minutes when [they] worked five hours or less a day." ECF No. 51, ¶ 17; ECF No. 54, ¶ 17. Plaintiffs were required to submit an hourly time sheet on a bi-weekly basis, and each time sheet reflected the same clock-in and clock-out information that was recorded by Plaintiffs on their individual manifests, and included time taken for lunch, sick leave, administrative time, holiday time, and vacation time. ECF No. 51, ¶¶ 18, 19; ECF No. 54, ¶¶ 18, 19. Lunch or meal periods were mandatory and Plaintiffs were required to include their lunch or meal period and break time taken on their manifest. ECF No. 51, ¶¶ 23, 24; ECF No. 54, ¶ 23, 24.

The present controversy regards two aspects of Plaintiffs' employment as NEMT drivers. The first issue concerns the compensability of Plaintiffs' lunch or break period. Plaintiffs argue that even though they were required to take an un-compensated lunch or break period and reflect that time on their time sheets, in reality they were not relieved of their work duties during these periods. Therefore, Plaintiffs argue, they are entitled to compensation. Defendant takes the position that these periods were non-compensable because Plaintiffs were free to utilize their breaks in any way they chose. ECF No. 50, ¶ 26. Furthermore, Defendant states that if Plaintiffs "did not have the opportunity to take their lunch then they were to report the failed opportunity

to their Transportation Supervisor so that management could ensure they received payment for their time." ECF No. 50, ¶ 25.

As for the second issue, Plaintiffs contend that "Defendant's express policies or directions required Plaintiffs to make contact with customers while at home, off-the-clock" and that Plaintiffs should be appropriately compensated for the time spent contacting clients. ECF No. 53, p. 12. Defendant argues that "no driver was ever instructed to contact clients off-the-clock and the greater weight of the evidence in this case dictates a finding that no such approved policy or practice existed[.]" ECF No. 52, pp. 11-12. Further, Defendant asserts that any off-the-clock phone calls would be non-compensable as insignificant or *de minimis*, based on Defendant's analysis of certain phone records. ECF No. 52, p. 12.

Furthermore, Defendant argues that "the March 2015 FLSA investigation by the U.S. Department of Labor ["DOL"] demonstrates that no genuine issue of material fact exists in this case and that Defendant is entitled to judgment as a matter of law." ECF No. 52, p. 14. Defendant notes that the DOL reviewed Defendant's practices regarding regular and overtime pay and determined that Defendant had not violated the FLSA payment provisions. That being said, Defendant concedes that the DOL findings are not binding on the Court, but urges the Court to consider the DOL's investigation and conclusions.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*., at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

### III. DISCUSSION

As discussed above, the present matter concerns whether Plaintiffs are entitled to compensation for lunch and break periods and purported off-the-clock client phone calls under either the FLSA or AMWA. In general, "[t]he FLSA and the AMWA impose similar minimum wage and overtime requirements on employers and, in cases involving claims brought under both acts, the courts have concluded that their parallel provisions should be interpreted in the same manner." *Cummings v. Bost, Inc.*, 2016 WL 6514103, at *5 (W.D. Ark. Nov. 1, 2016) (quoting

*Carter v. Primary Home Care of Hot Springs, Inc.*, 2015 WL 11120563, at *2 (W.D. Ark. May 14, 2015)). Therefore, the Court will only refer to the FLSA in the proceeding discussion but all conclusions apply with equal force to Plaintiffs' AMWA claims. Further, the Court will briefly address the effect of the DOL's investigation and findings regarding Defendant's compensation practices.

    **A. FLSA and AMWA Claims**

The FLSA dictates the minimum wage that an employer must pay employees who work up to forty hours per week. 29 U.S.C. § 206(a). Further, the FLSA requires employers to pay overtime pay when an employee works more than forty hours in a workweek. Specifically, the FLSA states that:

> no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Although the FLSA "does not define when an individual should be considered to be working for purposes of the Act," the Supreme Court "has defined work as 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Henson v. Pulaski Cnty Sheriff Dep't*, 6 F.3d 531, 533 (8th Cir. 1993) (quoting *Tenn. Coal, Iron & R.R. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)).

    **i. Compensability of Meal and Break Periods**

In order to determine whether meal periods are compensable under the FLSA, the Eighth Circuit has adopted the predominantly-for-the-benefit-of-the-employer standard. *Henson*, at 534. "Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." *Armour & Co. v. Wantock*, 323 U.S.

126, 133 (1944). Further, time may be deemed compensable even if an employee is waiting to be called into service, as the readiness to be called upon may be for the benefit of the employer. *See id*. "While there is no precise formula, courts have considered a variety of factors in evaluating whether employees' meal break periods are spent for the predominant benefit of their employer." *Haviland v. Catholic Health Initiatives – Iowa, Corp.*, 729 F. Supp. 2d 1038, 1061 (S.D. Iowa 2010). "Such factors include: the limitations and restrictions placed upon the employees, the extent to which those restrictions benefit the employer, the duties for which the employee is held responsible during the meal period, the frequency in which the meal periods are interrupted, and whether employees are allowed to resume an interrupted break." *Id*.

In *Henson v. Pulaski County Sheriff Department*, the Eighth Circuit examined two district court decisions, *Henson v. Pulaski County Sheriff Department* and *Houser v. North Little Rock Police Department*, in a consolidated appeal to determine whether certain law enforcement officers' meal breaks were compensable under the FLSA. For the sake of clarity, the Court will hereinafter refer to the Eighth Circuit's opinion as *Henson* or *Houser*, depending on which district court decision the court was addressing.

In *Houser*, the Eighth Circuit found that summary judgment had been proper. *Houser*, 6 F.3d at 535-36. The court noted that the officers were given a half-hour meal break and that each officer had to obtain clearance before beginning their break. Officers were allowed to return to the department and change into civilian clothes in preparation for their break while still on-the-clock. *Id*., at 536. While on break the officers had to "monitor their radios and respond to emergencies" and were subject to being approached by members of the public in their capacity as law enforcement officers. *Id*. However, the court noted that "[m]ost importantly, the officers may and do tend to personal errands" during their break periods. *Id*. Based on these facts, the court found that "these restrictions could not support a finding that the patrol officers spend their

7

meal breaks predominantly for the benefit of their employer" and that the "officers have a full thirty minutes to use for their own purposes and in which to travel, subject only to the possibility of being recalled in an emergency." *Id*.

Addressing the appeal from *Henson v. Pulaski County Sheriff Department*, the Eighth Circuit found that the grant of summary judgment in favor of the employee deputies was improper. *Henson*, 6 F.3d at 537. The court noted that at the trial level, the magistrate judge, sitting by consent of the parties, had found that:

> the deputies must remain on the premises of the jail facility during their thirty-minute meal breaks. If they receive their supervisor's permission, they may go to their cars or across the street to a fast food restaurant to pick up an order to bring back to the jail grounds. During the meal break, the deputies are free to do "anything they wish" and are relieved of all of their regular duties, which include supervising and feeding the inmates and maintaining order. The deputies, however, must respond to any emergency calls that are issued over the jail's intercom.

*Id*. The Eighth Circuit then stated that:

> [t]he extent to which, if any, the stay-on-the-premises requirement benefits the Department by eliminating the need to hire additional deputies to maintain order during meal breaks is an issue of material fact to be determined by a jury. Likewise, the extent to which, if any, the requirement interferes with the deputies' ability to attend to personal matters during their meal breaks is an issue of material fact to be determined by a jury.

*Id*.

In the present case, Plaintiffs argue that they should have been compensated under the FLSA for their time spent on meal breaks, claiming that "Defendant did not completely relieve Drivers during the hour in which Defendant deducted for lunch or meal time." ECF No. 43, ¶ 31. Specifically, Plaintiffs state that they were required to monitor their employer-issued cell phones during meal breaks and be available to pick up a client at the time the client or dispatcher called, even if they were not finished with their allotted break time. ECF No. 43, ¶¶ 28, 29. Furthermore, Plaintiffs claim that "Defendant maintained a policy requiring Plaintiffs to remain nearby clients

after delivering them to their appointment destination." ECF No. 54, ¶ 26. Plaintiffs also state that they "often had to pick up and look after clients during their lunch because they transported multiple clients at a time to staggered appointment times and pick up times" and that they "often worked through their lunch by staying with and looking after their clients, bringing them to eat or to the park to wait, or just waiting nearby [for] their clients to get done with appointments." ECF No. 53, p. 11. Based on these assertions, Plaintiffs argue that their "lunch periods were fictitious, but to the extent they existed, they were primarily for Defendant's benefit." ECF No. 53, p. 11.

Defendant states that "Plaintiffs were allotted a one hour lunch when Plaintiffs worked more than seven hours a day; . . . a thirty-minute lunch when Plaintiffs worked between six and six and one-half hours a day; and . . . a break of fifteen minutes when Plaintiffs worked five hours or less a day." ECF No. 51, ¶ 17. Further, while admitting that "Plaintiffs' lunch or meal periods were mandatory" and that "Plaintiffs were required to include their lunch or meal period and break time taken on their driver's manifest," Defendant states that if a NEMT driver did not have the opportunity to take a scheduled break "they were to report the failed opportunity to their Transportation Supervisor so that management could ensure they received payment for that time." ECF No. 51, ¶¶ 23, 24, 25. Defendant further contends that Plaintiffs were to utilize their break or meal time for their own benefit and "could drive their vans to [places] like the park, the mall, or to garage sales[.]" ECF No. 51, ¶ 29. Likewise, Defendant claims that it does not have a policy mandating that NEMT drivers stay close by clients after dropping them off. Defendant contends that NEMT drivers were simply required to stay within the "geographical area of Texarkana" when working in Texarkana, Arkansas, and Texarkana, Texas, and within the "local commuting area of Little Rock" when working in Little Rock, Arkansas. ECF No. 44-1, ¶ 6.

9

Defendant also states that "Plaintiffs were not required to disrupt their lunch or meal period or break to drop off or pick up clients" and "were not directed to pick up clients prior to the completion of Plaintiffs' lunch or meal period or any other allotted rest period." ECF No. 51, ¶¶ 26, 27, 28, 29, 34. Defendant has submitted affidavits of Vickie Vital and Karen Morine, former and current Transportation Supervisors employed by Defendant, attesting to Defendant's policies regarding NEMT drivers' lunch periods. Specifically, Ms. Morine states that:

> With regards to lunch times, when a Dispatcher calls to notify a driver that their client is ready for pickup, our drivers are instructed to tell the Dispatcher that they are at lunch and the Dispatcher will get another NEMT Driver to pick up the client. When the Driver finishes their lunch, they are to call back to Dispatch to find out which Driver/Vehicle picked up the client so that the changes can be written on their manifest.[] In the event that the Dispatcher calls to notify a driver that their client is ready for pickup, and another driver is not in the area or is unavailable to pick up the client, then the client is to wait until the driver finishes their lunch break before they are picked up from the medical facility.

ECF No. 55-2. The affidavit of Ms. Vital outlines the same policy and further states that "dispatchers were not to interrupt or disrupt the lunch hour of NEMT drivers by dispatching them during their lunch hours." ECF No. 44-1, ¶ 5. However, Ms. Vital concedes that there are occasions when a NEMT driver cannot take her scheduled break, but that if a NEMT driver is not able to reschedule her meal or break period into the current day's schedule, she is to notify a supervisor so they can include that period in her working hours. ECF No. 44-1, ¶ 5. In regard to monitoring their Defendant-issued cell phones during breaks, Defendant admits that "Plaintiffs were required to monitor their cell phones, however, they [were] not directed or required to discontinue any lunch break to pick up clients." ECF No. 51, ¶ 33.

It is undisputed that Plaintiffs were required to keep their Defendant-issued cell phone on and monitor it throughout the day, including during scheduled meal or break periods. However, the parties do not agree as to whether Plaintiffs were restricted in where they could go on their lunch breaks. Likewise, the parties have submitted conflicting affidavits as to whether Plaintiffs

were required to end their meal or break period and proceed to pick up clients when contacted by the dispatcher or a client. The Court will address each of these issues in relation to the compensability of Plaintiffs' meal or break periods in turn.

### a. Requirement that Plaintiffs Monitor Defendant-Issued Cell Phones During Meal and Break Times

Plaintiffs use the fact that they were required to monitor their Defendant-issued cell phones during their meal or break period as the basis for their argument that, regardless of what they were doing during a scheduled break period, they were simply waiting for a dispatcher to call and direct them to pick up a waiting client. Thus, Plaintiffs argue that while on "break" they were still working in that they were waiting to be called into immediate action, regardless of whether or not their break period was over. However, the fact that Plaintiffs were required to monitor their cell phones during their meal or break period is not dispositive. It is noteworthy that in *Houser* the Eighth Circuit found that even though officers had to monitor their radios and respond to emergencies, their meal times were not compensable.

Further, it appears to be undisputed that dispatchers do in fact call NEMT drivers while they are on their scheduled meal or break periods. However, neither party has put forth evidence as to the frequency of such calls. If a NEMT driver on average receives one call a week during his scheduled break that may suggest that NEMT drivers are generally free to use their break as they see fit. However, if NEMT drivers receive multiple calls from dispatchers during their break every day that may significantly affect their ability to use meal or break periods for personal pursuits. Without this key piece of information regarding frequency of such interruptions, it is difficult to weigh how the fact that Plaintiffs were required to monitor their cell phones throughout their break times affects the determination of whether those break or meal periods

were compensable.[2] Thus, the Court finds that summary judgment is not appropriate as the record contains conflicting affidavits and is not sufficiently developed regarding the frequency of dispatcher and client calls during Plaintiffs' meal or break periods.

### b. Geographical Restrictions During Break or Meal Times

A key issue in determining whether employee break or meals times are compensable under the FLSA centers around the restrictions placed on the employee during meal or break times. In the case at bar, the parties disagree as to the extent of the limitations placed on Plaintiffs. Plaintiffs contend that they were required to stay nearby the location of a client's appointment. Likewise, Plaintiffs assert that they were required to end their scheduled break period when notified by the dispatcher or client that the client was ready to be picked up. If true, this would necessarily require a NEMT driver to remain relatively close by client appointment locations. In contrast, Defendants state that Plaintiffs were free to use their break periods to attend to personal errands like going to the mall or garage sales, or simply driving to a park. According to Defendant, Plaintiffs' only geographical limitation was that they were required to stay in the "geographical area of Texarkana" when working in Texarkana, Arkansas, or Texarkana, Texas, and within the "local commuting area of Little Rock" when working in Little Rock, Arkansas. ECF No. 44-1, ¶ 6.

Both parties support their positions with signed statements. ECF No. 41-1, ¶ 5; ECF Nos. 53-2, 53-3, 53-4; ECF No. 44-1, ¶ 6. This issue is significant as, if Plaintiffs are required to stay nearby clients then their ability to attend to personal matters and errands during their scheduled break may be hindered. If that is the case, it may suggest that although they were off-the-clock,

---

[2] The same issue arises in regard to Plaintiffs' contention that they often had to "babysit" clients during their scheduled break periods. Plaintiffs make no allegations as to how often they used their breaks to take clients to meals or the frequency of occasions when they had to take their break while a client was in the van. If NEMT drivers are expected to take clients with them during their break periods that would likely limit a driver's ability to use that break period to attend to personal matters.

they were actually waiting for clients to finish appointments. Therefore, the Court finds that there is a genuine issue of material fact as to the limitations on where NEMT drivers could go during their break or meal periods. Accordingly, summary judgment is not appropriate.

### c. Requirement that Plaintiffs Return to Duty Upon Dispatcher's Call

The parties also disagree about whether NEMT drivers were required to end their meal or break period when notified by a dispatcher or client that a client was ready to be picked up. Plaintiffs assert that they were required to end their break and resume their duty as a NEMT driver whenever a dispatcher or client notified them that a client was finished with her scheduled appointment. In contrast, Defendant contends that NEMT drivers were not required to return to service upon receiving a dispatcher's or client's call, and instead were to inform the dispatcher that they were taking a scheduled break. According to Defendant, the dispatcher would then notify the client and advise the client of the projected time the NEMT driver would return to pick them up. ECF No. 44-1, ¶ 4. Further, clients were also given NEMT drivers' phone numbers so the client could call the NEMT driver directly. ECF No. 55-2. Thus, the parties take wholly opposite positions on this factual issue.

Again, both parties have supported their positions with signed statements. ECF No. 41-1, ¶ 5; ECF Nos. 53-2, 53-3, 53-4; ECF No. 44-1, ¶ 4; ECF No. 55-2. Whether a NEMT driver was required to drop what he or she was doing during a scheduled break and return to duty upon a call from a dispatcher or client would likely have a significant impact on whether a NEMT driver could pursue personal matters during their time off-the-clock. Thus, there appears to be a genuine issue of material fact as to this issue and, therefore, summary judgment is not appropriate.

For the foregoing reasons, the Court finds that summary judgment is not appropriate in regard to whether Plaintiffs' meal or break times were compensable as genuine issues of material

13

fact remain. Based on the current record, the Court cannot determine whether Plaintiffs' meal or break periods were used predominately for the benefit of Defendant.

### ii. Compensability of Off-the-Clock Client Phone Calls

Turning to the issue of whether Plaintiffs were due compensation for alleged off-the-clock client calls, the Court also finds that summary judgment is inappropriate. As an initial matter, it appears to be undisputed that NEMT drivers received their manifest detailing the next day's assignments, and were required to call each client, the day before their scheduled appointments. ECF No. 52, p. 11; ECF No. 53, p. 12.

Defendant states that "while Plaintiffs allege that they contacted clients off-the-clock, several other NEMT drivers declared that they contacted their clients while on the clock." ECF No. 52, p. 11. Defendant also argues that "no driver was ever instructed to contact clients off-the-clock and the greater weight of the evidence in this case dictates a finding that no such approved policy or practice existed at Defendant's agency." ECF No. 52, pp. 11-12. Furthermore, Ms. Vital stated that:

> Most, if not all drivers, would remain in their vans and call their clients at the end of the day. No NEMT driver was ever instructed to call their transportation client off-the-clock or after hours. Calling clients off-the-clock was not an approved practice or procedure during my tenure nor was it expected.

ECF No. 44-1, ¶ 7. Ms. Vital further stated that she was never advised of any off-the-clock client contact practices by any NEMT driver. ECF No. 44-1, ¶ 8. Defendant has also provided signed statements of sixteen NEMT drivers stating that they did not make client calls off-the-clock. ECF No. 17. Each NEMT driver declaration states:

> I am familiar with the requirement for drivers to contact their clients prior to the time for transporting them and I have undertaken this responsibility. However, I have undertaken this requirement during duty time and have not been denied compensation for undertaking this work.

ECF Nos. 17-5, ¶ 6; 17-6, ¶ 6; 17-7, ¶ 6; 17-8, ¶ 6; 17-9, ¶ 6; 17-10, ¶ 6; 17-11, ¶ 6; 17-12, ¶ 6; 17-13, ¶ 6; 17-14, ¶ 6; 17-15, ¶ 6; 17-16, ¶ 6; 17-17, ¶ 6; 17-18, ¶ 6; 17-19, ¶ 6; 17-20, ¶ 6.

Defendant also claims that, upon examination of some of the Plaintiffs' phone records,[3] any calls made off-the-clock were "insignificant or *de minimis*." ECF No. 52, p. 12. The analysis of Plaintiffs' phone records was done by Jeff Cummings, who is employed by Defendant as a Transportation Supervisor, and his staff. ECF No. 52, p. 12. Defendant does not state whether this analysis was of Plaintiffs' Defendant-issued cell phones or personal cell or home phones.

Plaintiffs argue that their purported off-the-clock client contacts are compensable "because Defendant's express policies or directions required Plaintiffs to make contact with customers while at home, off-the-clock." ECF No. 53, p. 12. Plaintiffs note that Defendant "maintained a policy or practice of providing each Driver a manifest, which showed the names of each client for whom each Driver was responsible for providing non-emergency transportation the next day" and that Defendant "generally gave each Driver a manifest at the end of each Driver's shift or otherwise after the Driver returned to the office at the end of all their transportation duties for the day, on the day prior to the client's scheduled day of transport." ECF No. 53, p. 12. Plaintiffs further state that Defendant "maintained a policy requiring Drivers to fill out their manifest to match their compensable working time" and required "Drivers to turn in their manifest for the day that just ended upon finishing their routes, not the next day." ECF No. 53, p. 12. Plaintiffs also allege that "Defendant maintained a policy requiring Drivers to call each client on the Client Manifest on the day prior to the scheduled day of transport to remind each client of their pick up time" and "never instructed Drivers to refrain from calling these clients after going home, off-the-clock." ECF No. 53, p. 12. Plaintiffs argue that:

---

[3] Defendant states that "no detailed records could be provided by" Plaintiffs Lafayette and Youngs' phone service providers. ECF No. 52, p. 12. However, Defendant subsequently attached purported copies of both Plaintiff Lafayette and Plaintiff Youngs' phone records. ECF Nos. 55-7, 55-8. Defendant does not state whether these records are for Plaintiffs' Defendant-issued cell phones or personal phones.

> Defendant cannot disclaim knowledge that Plaintiffs and others were working off-the-clock when Defendant knew of and created the circumstances for such work to occur. If Drivers must enter in a stop time on the current day's manifest and must turn in the manifest at the end of that day, but also do not receive the next day's manifest until the end of a shift and must call those clients on the day prior to their trip, then Drivers would be naturally inclined to perform this duty at home, off-the-clock. No one ever affirmatively told Drivers to refrain from calling clients while at home, off-the-clock. Defendant did not specifically allot time for Plaintiffs to make calls during paid times, but required the calls to be made.

ECF No. 53, p. 13.

Finally, Plaintiffs contend that Defendant's argument that time spent making off-the-clock calls was *de minimis* is meritless, as Defendant has "offered no proof of phone records for Angela Lafayette or Jarvis Young."[4] ECF No. 53, p. 13. Further, Plaintiffs have submitted declarations stating that they spent anywhere from twelve to sixty minutes, respectively, on average each day making off-the-clock client phone calls. ECF No. 53-1, ¶ 4; ECF No. 53-2, ¶ 8; ECF No. 53-3, ¶ 8; ECF No. 53-4, ¶ 8. Likewise, Plaintiffs contend that Defendant has not addressed the fact that Plaintiff Hayes has declared that she did not always use her Defendant-issued cell phone to call her next day's clients. ECF No. 53, p. 13; ECF No. 53-3, ¶ 9.

Upon examination of the parties' arguments it is clear that there is a material factual dispute regarding whether or not Plaintiffs were required to make some client phone calls while off-the-clock. Plaintiffs' argument that Defendant's policy of requiring each NEMT driver to turn in her manifest at the end of her route and then receive her next day's manifest necessarily required NEMT drivers to call their clients off-the-clock may have merit. It seems logical that after turning in a daily manifest and receiving the next day's manifest, a NEMT driver may have to make calls after her shift ended, while off-the-clock, in order to comply with Defendant's requirement that NEMT drivers confirm the next day's appointments with clients. However, the Court notes that, based on the record thus far, it is not clear whether NEMT drivers could simply

---

[4] Defendant subsequently provided phone records for Plaintiffs Lafayette and Young. ECF Nos. 55-7, 55-8.

16

record any time spent calling clients after turning in the current day's manifest on the next day's manifest. If NEMT drivers were allowed to do so, it would seem that they could call their clients at any time after they ended their shift, record that time on the next day's manifest, and thereby be compensated for their time spent calling clients. Therefore, the Court finds that, based on the record before the Court, material factual issues remain regarding whether Plaintiffs were required to call clients off-the-clock and whether Plaintiffs were compensated for those calls.

Further, there is a material factual issue as to whether Plaintiffs in fact did call clients off-the-clock. Defendants claim that if Plaintiffs called clients after-hours, any off-the-clock calls would be *de minimis*. Plaintiffs argue that they spent significant amounts of time calling clients off-the-clock, with each Plaintiff claiming to have spent from twelve to sixty minutes per day making uncompensated client calls. Although Defendant has provided some relevant phone records and statements regarding the analysis of those records, the Court is unable to determine whether Plaintiffs were compensated for client calls based on these records. Likewise, as Plaintiff Hayes has stated that she did not always use her Defendant-issued cell phone for client calls, the record of relevant phone calls is incomplete.

Furthermore, upon review of the manifests that have been entered into the record, it appears that NEMT drivers often worked somewhat irregular hours, with start times as early as 4:30 a.m. and end times as late as 8:15 p.m. ECF No. 35-2. Therefore, because of the highly variable schedules of NEMT drivers, a list of phone records, without more, is of little use as phone calls that would appear to be after-hours may in fact have taken place while a NEMT driver was still on-the-clock. Thus, in order for the Court or Plaintiffs to undertake a meaningful examination of those records, Defendants must provide not only phone records, but also complimentary manifests and time sheets. Only by a detailed examination of Plaintiffs' phone records in conjunction with corresponding manifests and time sheets will the Court or the parties

17

be able to determine whether Plaintiffs actually engaged in off-the-clock client calls and whether they were compensated for that time. Accordingly, summary judgment on the current record would be inappropriate and Defendant's motion should be denied.

### B. Effect of Department of Labor Investigation and Conclusions

As previously noted, Defendant concedes that the DOL's findings are not binding on the Court. However, the Court certainly agrees with Defendant that generally DOL findings are entitled to a certain degree of persuasive weight. That being said, the documents in the record regarding the DOL investigation are significantly redacted and provide little insight into the scope or depth of the DOL's investigation or the facts and assertions considered by investigators. ECF No. 17-21. Therefore, the Court finds that, without more, the DOL's findings and conclusions are not very helpful in resolving the matter currently before the Court.

### IV. CONCLUSION

Therefore, for the foregoing reasons, the Court finds that genuine issues of material fact remain and Defendant's Motion for Summary Judgment (ECF No. 50) should be and hereby is **DENIED**.

**IT IS SO ORDERED**, this 17th day of May, 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge